IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE, VA
FILED

JAN 21 2026

LAURA A. AUSTIN, CLERK
BY: /s/
    DEPUTY CLERK

| | | |
|---|---|---|
| CHRISTINA Y.,[1] | ) | |
| | ) | |
| Plaintiff | ) | Civil Action No. 7:25-CV-00121 |
| | ) | |
| | ) | |
| FRANK BISIGNANO, | ) | By: Hon. Michael F. Urbanski |
| Commissioner of Social Security, | ) | Senior United States District Judge |
| | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

Plaintiff Christina Y. ("Christina") filed this action challenging the final decision of the Commissioner of Social Security denying her claim for a period of disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§ 423 and 1381a. In her brief in support of her application, Christina argues that the determination of the administrative law judge ("ALJ") that she is not disabled is not supported by substantial evidence. Pl.'s Br., ECF No. 15. The Commissioner responds that substantial evidence supports the ALJ's determination that Christina is not disabled. Def.'s Br., ECF No. 24.

As discussed more fully below, the court finds that substantial evidence does not support the ALJ's determination that Christina is not disabled. Accordingly, the Commissioner's determination that Christina is not disabled is **VACATED** and this case is remanded for further development in accordance with this opinion.

---

[1] Due to privacy concerns, the court adopts the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

## I. Judicial Review of Social Security Determinations

It is not the province of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. See Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990), and Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). The court will uphold a Social Security disability determination if "'(1) the ALJ applied the correct legal standards and (2) substantial evidence supports the ALJ's factual findings.'" Oakes v. Kijakazi, 70 F.4th 207, 212 (4th Cir. 2023) (quoting Arakas v. Comm'r Soc. Sec. Admin., 983 F.3d 83, 94 (4th Cir. 2020)).

A court may neither undertake a de novo review of the Commissioner's decision, reweigh conflicting evidence, nor substitute its judgment for that of the ALJ. Id. Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Laws, 368 F.2d at 642. "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

Nevertheless, the court does not "'reflexively rubber-stamp an ALJ's findings.'" Oakes, 70 F.4th at 212 (quoting Arakas, 983 F.3d at 95). Remand is appropriate when the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." See Mascio v. Colvin, 780 F.3d 632, 636–37 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"). See also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## II. Claim History[2]

Christina was born in 1974 and obtained a GED. R. 436, 472. She has past relevant work as a certified nursing assistant ("CNA"), a delivery driver/counter attendant at an auto parts store, and a home healthcare provider. R. 473. Christina filed her current application for disability benefits on July 13, 2020, alleging an onset date of August 14, 2019. R. 433, 436. She alleges disability based on osteoarthritis in her spine, low back pain radiating into her left leg past her knee, left sided sciatica, osteoarthritis in both feet, coronary artery disease post catheterization, anxiety with panic attacks, depression, and high blood pressure. R. 471.

After an initial ALJ opinion denying Christina's claim, she requested review of the decision from the Appeals Council. R. 242–61, 358–60. The Appeals Council remanded the case on November 8, 2022, finding that the hypothetical question presented to the vocational

---

[2] Christina previously applied for disability benefits on April 13, 2017, and her application was denied at all administrative levels. R. 188–203. It does not appear that she sought judicial review of the denial.

3

expert at the ALJ hearing did not include multiple mental health limitations which were noted in the residual functional capacity ("RFC") assessed by the ALJ. In addition, the RFC included a limitation allowing Christina to stand and stretch to avoid discomfort but lacked detail explaining how often or how long the breaks should occur or whether the claimant would remain on task or at the workstation during such a break. R. 264. On remand, the ALJ was to reassess the RFC to consider these issues. R. 265.

A subsequent ALJ hearing was held on November 15, 2023, and on January 12, 2024, the ALJ issued an opinion finding Christina not disabled. R. 127–57, 108–20. Applying the five-step evaluation process described in the regulations, he first found that Christina met the insured status requirements through December 31, 2021.[3] R. 108. Christina had not engaged in substantial gainful activity since her alleged onset date of August 14, 2019. Id. at 110. The ALJ next found that Christina had severe impairments of degenerative disc disease, obesity, cervicalgia, mild coronary artery disease, depression, and anxiety. Id. The ALJ next found that none of Christina's impairments, either alone or in combination, met or equaled the criteria for a listed impairment. Id. at 111–13.

---

[3] The ALJ makes a series of determinations: (1) Whether the claimant is engaged in substantial gainful activity; (2) Whether the claimant has a medically determinable impairment that is "severe" under the regulations; (3) Whether the severe impairment or combination of impairments meets or medically equals the criteria of a listed impairment; (4) Whether the claimant has the residual functional capacity to perform his past relevant work; and (5) Whether the claimant is able to do any other work in the national economy, considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a) and 416.920(a). If the ALJ finds that the claimant has been engaged in substantial gainful activity at Step 1 or finds that the impairments are not severe at Step 2, the process ends with a finding of "not disabled." Mascio, 780 F.3d at 634-635. At Step 3, if the ALJ finds that the claimant's impairments meet or equal a listed impairment, the claimant will be found disabled. Id. at 635. If the analysis proceeds to Step 4 and the ALJ determines the claimant's RFC will allow her to return to her past relevant work, the claimant will be found "not disabled." If the claimant cannot return to her past relevant work, the ALJ then determines, often based on testimony from a vocational expert, whether other work exists for the claimant in the national economy. Id. The claimant bears the burden of proof on the first four steps and the burden shifts to the Commissioner on the fifth step. Monroe, 826 F.3d at 178–79.

The ALJ determined that from her alleged onset date of August 14, 2019, through her date last insured of December 31, 2021 (the "relevant period"), Christina had the RFC to do sedentary work, except for being able to lift or carry at the light level. In addition, she could stand or walk no more than four hours, could not crawl or be exposed to unprotected heights; could occasionally climb, balance, stoop, kneel, and crouch; could have occasional exposure to extreme cold and vibrations; was limited to simple tasks that could be learned in 30 days or less; could not perform production rate or pace work, defined as having to keep up with an assembly line that is constantly moving or in a job with strict hourly or daily quotas; and could have no more than occasional interaction with the public. R. 113. The ALJ next found that Christina could not return to her past relevant work but based on the testimony of the vocational expert, could do other work in the national economy, such as that of a document preparer, stuffer/blower, or assembler, and therefore was not disabled. R. 118–19. Christina sought review from the Appeals Council, which denied review on January 3, 2025. R. 1–5. This lawsuit followed.

Christina argues that the ALJ erred in several ways when he determined that she was not disabled: (1) He failed to properly consider the impact of Christina's obesity upon her other impairments and on her RFC; (2) he failed to properly consider Christina's subjective allegations of disabling pain; (3) in his RFC assessment he failed to make specific findings regarding whether Christina's impairments would result in limitations of her ability to sit, walk, or stand, or whether the impairments would cause her to be off-task for such lengths of time, or absent from work for so many days that she could not sustain competitive employment; and (4) he failed to properly assess the effect of Christina's mental impairments on her ability

5

interact with the public and on her ability to concentrate, persist, and maintain pace. The court finds dispositive Christina's third argument that the ALJ did not properly assess her ability to work on a regular and continuing basis and accordingly addresses only that issue.

### III. Analysis

A claimant's RFC "is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96-8P, 1996 WL 374184 at *2 (S.S.A. 1996). "Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." Id. "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.

In assessing the RFC, the adjudicator should consider the claimant's medical history, medical signs, and laboratory findings, the effects of treatment, reported daily activities, lay evidence, recorded observations, medical source statements, effects of symptoms that are reasonably attributed to a medically determinable impairment, evidence from attempts to work, need for a structured environment, and work evaluations, if available. Id. at *5. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence. Id. at *7.

The RFC must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions

6

in paragraphs (b), (c), and (d) of 20 CFR §§ 404.1545 and 416.945. Only after that may the RFC be expressed in terms of the exertional levels of work: sedentary, light, medium, heavy, and very heavy. SSR 96-8p, 1996 WL 374184 at *1, 3. Physical abilities set out in 20 C.F.R. §§ 404.1545(b) and 416.945(b) include sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, and crouching. Mental abilities are set out in §§ 404.1545(c) and 416.945(c).[4] The ALJ also must explain how he considered and resolved any material inconsistencies or ambiguities in the record. SSR 96-8p, 1996 WL 374184 at *7.

There is no per se rule that an ALJ opinion is not supported by substantial evidence if he fails to perform an explicit function-by-function analysis. Mascio, 780 F.3d at 636. Rather, "remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Id. In Mascio, the case was remanded because the ALJ's assessment of the claimant's RFC did not address conflicting evidence in the record and did not include an analysis of whether the claimant could perform certain functions for an entire workday. Id. at 637.

As set forth above, the ALJ found that Christina had the RFC to do sedentary work, except for being able to lift or carry at the light level. In addition, the ALJ found she could stand or walk no more than four hours, could not crawl or be exposed to unprotected heights; could occasionally climb, balance, stoop, kneel, and crouch; and could have occasional exposure to extreme cold and vibrations.

---

[4] Abilities set out in paragraph (d) of the regulation include those affected by skin impairments or epilepsy, impairment of vision, hearing, or other senses, or impairments which impose environmental restrictions.

Christina argues that the ALJ failed to properly consider whether her pain is so continuous or severe that it prevents her from working a full eight-hour day. Pl.'s Br., ECF No. 15 at 36. Christina is correct. The ALJ failed to make specific findings regarding whether the impairments would cause her to be off task such that she could not maintain employment.

To be sure, the ALJ summarized Christina's testimony about her pain and other symptoms and concluded that her allegations of disabling pain were not entirely consistent with the other evidence in the record. R. 114. He found that during the relevant period, her medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 116. The ALJ summarized medical records showing lumbar tenderness, positive special testing of the sacroiliac joints, and limited range of motion, along with imaging that showed disc bulging and protrusion and with flattening and a mild mass effect on the thecal sac. He also considered other records that showed no sign of neurological issues, and that she had a normal gait and full strength. R. 116, 595. Additionally, while she complained of neck pain, the ALJ noted that she did not have upper extremity abnormalities and there were no images of cervical degeneration prior to her date last insured. R. 116.

The ALJ also reviewed the opinions of the state agency experts. At the initial determination, the state medical consultant assessed Christina with the ability to do light work, including standing and walking up to six hours in an eight-hour workday with additional postural limitations. R. 214–15. The ALJ found this opinion only somewhat persuasive because Christina's significant lumbar degeneration required a greater standing/walking

limitation and greater postural limitations. R. 117. The ALJ found the reconsideration assessment, which limited Christina to standing and walking with normal breaks for four hours and additional postural limitations, to be mostly persuasive, except for a total prohibition on crouching. R. 117, 232. Nevertheless, despite the summary of Christina's allegations and the evidence in the record, the ALJ did not complete a proper RFC assessment because he did not address her ability to work on a regular and continuous basis.

Christina raised the issue of whether she could sustain substantial gainful activity over the course of an eight-hour day at the administrative hearing, when her counsel stated that it was her position "that due to the combination of her physical and mental impairments, she's unable to sustain any type of Substantial Gainful Activity over the course of an eight-hour workday." R. 133. Christina testified that she could stand for only ten minutes at a time before needing to sit down or change positions, R. 139, and could sit for only 45 minutes at a time. R. 140. After that, she would need to walk around for a few minutes. R. 140–41. She also had shortness of breath on exertion, which was treated with a "fluid pill." R. 142. In addition, fatigue caused her to nap two or three hours a day. R. 144. It was difficult to sleep at night because lying down caused muscle spasms. R. 146.

In response to a question by Christina's counsel, the vocational expert testified that if a person were off task more than ten percent of an eight-hour workday, it would preclude competitive employment. R. 154–55. He testified that a need to change position and leave the workstation that caused her to be off task more than ten percent of the workday would not be tolerable in competitive labor. R. 155.

The ALJ did not address whether Christina could complete an eight-hour workday, despite her raising the issue at the hearing, and despite her testimony that she would be off task more than ten percent of the workday. Although he found that Christina's allegations regarding her pain were not entirely supported by the other evidence in the record, that did not relieve him of the obligation to consider whether and how much pain or other symptoms would cause her to be off task during a workday. The regulations are clear that the issue must be addressed. See SSR 96-8p (stating that the RFC assessment must include a discussion of the individual's ability to do sustained work activities on a regular and continuing basis, defined as eight hours per day, five day per week, or an equivalent work schedule.)

It is possible that the ALJ did not find that Christina would be off task at all, but without a discussion of the issue, the court is left to guess at whether he made such a finding, or whether he failed to consider it. Thus, remand is appropriate. See Mascio, 780 F.3d at 636–37 (remanding in part because although ALJ concluded that claimant could perform certain functions, he said nothing about the claimant's ability to perform them for a full workday); Megan. S. v. Kijakazi, No. 3:20-CV-54, 2022 WL 985865, at *3–4 (W.D. Va. Mar. 31, 2022) (Moon, J.) (quoting 20 C.F.R. § 404.1545(b)) (remanding where ALJ failed to assess whether claimant's impairments would cause her to be unable to work on a "'regular and continuing basis.'")

In addition, when the Appeals Council remanded this case on November 8, 2022, it noted that the prior opinion contained a limitation that Christina be allowed to stand and stretch to avoid discomfort, but lacked detail regarding how often the break should occur, for how long, or whether Christina would remain on task at the workstation during such a break.

The ALJ was directed to further evaluate the issue. R. 264. The ALJ did not do so and the lack of evaluation further supports the court's decision that remand is appropriate in this case.

Because the court finds it proper to remand this case based on the faulty RFC determination, Christina's additional allegations of error are not addressed. See Mohammed H. v. Saul, No. TMD 20-1178, 2021 WL 1174720, at *7 (D. Md. Mar. 29, 2021) (citing Tanner v. Comm'r of Soc. Sec., 602 F. App'x 95, 98 n.* (4th Cir. 2015) (per curiam) (remanding on other grounds and declining to address claimant's remaining argument). However, upon remand, the Commissioner should consider Christina's remaining allegations of error.

### IV. Conclusion

The court concludes that the ALJ in this case erred when he did not assess whether Christina's impairments would affect her ability to work on a regular and continuing basis, defined as 8 hours a day, for 5 days a week, or an equivalent work schedule. Accordingly, the court **VACATES** the Commissioner's decision that Christina is not disabled and **REMANDS** this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further development in accordance with this opinion. This matter is **DISMISSED** and **STRICKEN** from the active docket of the court.

An appropriate order will be entered.

It is so **ORDERED**.

Entered: January 21, 2026

Michael F. Urbanski
Senior United States District Judge